**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Submitted: January 10, 2025
Decided: March 19, 2025

Seth A. Niederman, Esquire
FOX ROTHSCHILD LLP
1201 N. Market Street, Suite 1200
Wilmington, Delaware 19801

Joseph O. Larkin, Esquire
Arthur R. Bookout, Esquire
Eric M. Holleran, Esquire
Taylor Jo Brocka, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
Wilmington, Delaware 19899

RE: *Lannett Co., Inc. v. Areva Pharmaceuticals Inc.*
      C.A. No. N24C-02-092 PRW CCLD
      Plaintiff's Motion to Compel

Dear Counsel:

This Letter Decision and Order resolves Plaintiff Lannett Company Inc.'s

Motion to Compel (D.I. 40). For the reasons explained below, that motion is

**DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Lannett Co., Inc. and Areva Pharmaceuticals Inc. entered a Distribution

---

[1] The Court issues this Letter Order mindful that the parties have a fuller understanding of and familiarity with the factual background and operative agreement than is recounted herein.

Agreement.[2]    The Agreement granted distribution rights to Lannett for a chemotherapeutic agent.[3]  Payments were based on royalties, with Areva receiving 55% of the net profits and Lannett receiving 45% of the net profits.[4]  The parties' relationship was rocky at best, and distribution faced various FDA roadblocks.[5]

About a year after the Agreement was signed, Areva sent a notice terminating the Agreement.[6]  But Areva quickly rescinded its termination notice.[7]  Then, almost a year later, this suit was filed to settle the dispute over unpaid royalty payments owed to Lannett.[8]  The Complaint also asserts that Areva failed to disclose royalty reports to Lannett; those reports are needed to determine the exact amount of unpaid royalty payments owed.[9]

---

[2]    *See generally* Pl.'s Mot. to Compel Ex. A ("Distribution Agreement") (D.I. 40).

[3]    Distribution Agreement § 2.1.

[4]    Distribution Agreement § 3.7.  The distribution agreement's exclusivity and payment provisions were amended. Am. Compl. Ex. B ("Amendment No. 1") (D.I. 20).

[5]    *See, e.g.*, Am. Compl. Exs. D and K (D.I. 20).

[6]    Answer to Am. Compl. Ex. R ("Notice of Termination of Distribution Agreement") (D.I. 22).

[7]    The parties now dispute whether the notice was, indeed, lawfully rescinded.  Am. Compl. ¶¶ 10-11 (D.I. 20); Answer to Am. Compl. ¶ 10 (stating that Areva "admits that it sent a letter to Lannett providing notice of termination of the Distribution Agreement under Section 16.2(a)(ii) on May 24, 2023, and that Areva subsequently retracted its notice of termination in reliance on Lannett's false promises that it would negotiate the termination of the Distribution Agreement in good faith") (D.I. 22).

[8]    *See generally* Compl. (D.I. 1).

[9]    *See* Am. Compl. ¶¶ 123-25.

On September 12, 2024, well after the disputed revocation, Lannett sent Areva a letter attempting to exercise its audit rights under the Agreement for reports from January 2023 to January 2024.[10]  Agreement § 15.2 grants the parties the right to audit one another:

> Each Party will keep accurate and complete books and records of all transactions related to this Agreement for twelve (12) months following each year during the Term of this Agreement.  On reasonable notice and during business hours, each Party and its representatives will have the right to audit the books and records of the other Party and its Affiliates for compliance with applicable Regulatory Requirements and to determine the accuracy of the amounts paid to Supplier under this Agreement with respect to a twelve (12) month period of time covered by the audit.  Either Party may appoint an independent expert to audit the relevant records with respect to the prior twelve (12) month period. The Party being audited shall make its records available for audit by such independent expert during regular business hours at such place or places where such records are customarily kept, upon sixty (60) days written notice from the other Party.  Absent manifest error, or any material errors or omissions in the records provided to the independent expert, the results of each audit, if any, shall be binding on both Parties. The Party appointing the independent expert shall bear the full cost of such audit, except in the event that the results of the audit reveal an underpayment, as the case may be, of five percent (5%) or more over the period being audited, in which case the audit fees for such examination shall be paid by the other Party.[11]

But the audit right doesn't survive the Agreement's termination.[12]

---

[10]  Pl.'s Mot. to Compel Ex. D ("Notification Letter of Intent to Audit Areva's Books and Records") (D.I. 40).

[11]  Distribution Agreement § 15.2.

[12]  *See* Distribution Agreement § 16.4 ("Notwithstanding any provision of the Agreement to the

Areva rejected the audit request.[13] Areva reasoned that since the Agreement—which granted the audit rights—had been terminated, Lannett had no contractual right to an audit.[14] Lannett claimed that discovery would be the only way to access the requested records.[15]

Now before the Court is Lannett's Motion to Compel, which asks the Court to, *inter alia*, enter "an order compelling Areva to comply with the Audit Request."[16]

## II. LEGAL STANDARD

Civil Rule 37 permits a party to file a motion for an order compelling discovery upon reasonable notice to other parties.[17] The scope of discovery is broad; the parties are generally entitled to discovery that is reasonably calculated to lead to admissible, non-privileged evidence.[18] "The objecting party bears the burden to show why the information is improperly requested."[19] And "objections to discovery

---

contrary, Sections 3.4, 3.5, 3.8, 3.9, 4, 5, 6, 7, 8, 9.2, 10, 11, 12, 13, 14, 17, and 18 hereof *will survive* any termination or expiration of this Agreement.") (emphasis added).

[13] Pl.'s Mot. to Compel Ex. E ("Def.'s Reply to Notification Letter of Intent to Audit Areva's Books and Records") (D.I. 40).

[14] Def.'s Reply to Notification Letter of Intent to Audit Areva's Books and Records at 1-2.

[15] Def.'s Reply to Notification Letter of Intent to Audit Areva's Books and Records at 2.

[16] Pl.'s Mot. to Compel at 12. Other discovery issues raised in the motion have been resolved.

[17] Del. Super. Ct. Civ. R. 37.

[18] *Alberta Sec. Comm'n v. Ryckman*, 2015 WL 2265473, at *9 (Del. Super. Ct. May 5, 2015).

[19] *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 5049459, at *2 (Del. Super. Ct. Nov. 1, 2021) (citing *Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*, 2019 WL 3384843, at *1 (Del. Super.

requests, in general, will not be allowed unless there have been clear abuses of the process which would result in great and needless expense and time consumption."[20]

### III. DISCUSSION

This application makes a peculiar request; Lannett seeks to have the Court order performance under a specific contractual provision—the contract-borne and -defined right to audit Areva—via a discovery motion.[21] Now were Lannett making a typical discovery request for relevant historical financial records, the Court would not doubt grant such.[22] But it's not. It's seeking specific enforcement of a wholly contract-created audit right[23] through a motion to compel. That's incognizable under Rule 37.

Because Lannett's right to an audit is contractual, it is grounded solely upon a finding of the Agreement's validity at the time of the request.[24] So, no matter the mechanism employed, the Court would first have to determine whether Areva

---

Ct. July 26, 2019)); *see also Hunter v. Bogia*, 2015 WL 5050648, at *2 (Del. Super. Ct. July 29, 2015).

[20] *Bogia*, 2015 WL 5050648, at *2.

[21] Pl.'s Mot. to Compel at 11-12.

[22] *See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004) (explaining that parties are entitled to non-public transactional documents and to collect evidence regarding financial conditions).

[23] *See* Distribution Agreement § 15.2.

[24] Distribution Agreement § 16.4.

properly revoked its termination of the Agreement prior to its audit request—the very issue is one that must be litigated and should be decided via a formal, dispositive decision.[25] A legal determination of whether the contract was actually terminated will better elucidate the parties' rights and responsibilities with respect to Lannett's entitlement to conduct an audit.

Areva's objection to the discovery request here is well-taken. Lannett cannot use a discovery request to guise what is clearly an attempt to enforce a contractual right. To force conduct of the audit sought by employ of Rule 37, in the Court's view, would be a clear abuse of the process.

## IV. CONCLUSION

Based on the foregoing, Lannett's Motion to Compel is **DENIED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

cc: All Counsel via File and Serve

---

[25] *See, e.g.*, *Grand Acq. LLC v. Passco Indian Springs DST*, 145 A.3d 990, 992 (Del. Ch. 2016) (granting books and records where plaintiff brings contractual books and records action and files a motion for summary judgment on a plainly and indisputably valid and enforceable contract); *see also AIU Ins. Co. v. Philips Elecs. N. Am. Corp.*, 2015 WL 3526976, at *6-8 (Del. Ch. June 4, 2015) (discussing the right to conduct an audit and its scope on a motion for summary judgment); *see also Int'l Union of Operating Eng'rs Loc. 98 Health & Welfare Fund v. S & R Corp.*, 95 F. Supp. 3d 1, 5 (D. Mass. 2015) (addressing a party's request for "an order from the court compelling production of the requested documents necessary for an audit" on a motion for summary judgment).